**TRANSWITCH CORPORATION,**
**Plaintiff,**

v.

**GALAZAR NETWORKS,**
**INC., Defendant.**

**No. CIV.A. 03–10228–NG.**

United States District Court,
D. Massachusetts.

March 1, 2005.

Counsel for Plaintiff TranSwitch Corporation is: John J. Cotter, Kirkpatrick & Lockhart Nicholson Graham, LLP, Boston.

Counsel for Defendant Galazar Networks, Inc. at the time of those Orders were: Stephen G. Rudisill, Gary E. Hood, Russell J. Genet, Jenkens & Gilchrist, Chicago, IL, U. Gwyn Williams, Goodwin Procter LLP, Exchange Place, Boston.

## ORDER

GERTNER, District Judge.

ORDER entered adopting Report and Recommendations re [docket number 59] on the dismissal of infringement claims [docket number 42] without prejudice. Transwitch, via a motion to amend seeks to eliminate all of the counts in the original complaint (patent infringement counts) and then to introduce new counts (False advertising and unfair competition). In addition, Transwitch has moved to dismiss Galazar's counterclaim for a declaratory judgment [docket number 42] that it is not infringing. While Magistrate Judges have the authority to decide motions to amend outright, Magistrate Judge Bowler appropriately treats the portion of Transwitch's motion to amend that seeks to drop the patent infringement claims as a motion to dismiss and therefore issues a Report and Recommendation on it, as well as on docket # 42, Transwitch's affirmative motion to dismiss Galazar's counterclaims which involve the same issue. As to the dispositive motion, the motion to dismiss patent in-

fringement claims, I adopt the Report and Recommendation and enter an order dismissing these claims without prejudice. As to the non dispositive motion, the motion to amend, I conclude that the Magistrate Judge's order is neither clearly erroneous or contrary to law under Fed. R. Civ. Pro. 72(a).

REPORT AND RECOMMENDATION RE: TRANSWITCH'S RULE 12(B)(1) MOTION TO DISMISS GALAZAR'S DECLARATORY JUDGMENT ACTION FOR LACK OF SUBJECT MATTER JURISDICTION (DOCKET ENTRY # 42)

MEMORANDUM AND ORDER RE: DEFENDANT'S MOTION FOR LEAVE TO FILE AN AMENDED ANSWER AND COUNTERCLAIM (DOCKET ENTRY # 30); TRANSWITCH'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT (DOCKET ENTRY # 40)[1]

September 30, 2004

BOWLER, United States Magistrate Judge.

Pending before this court are the above styled motions. After holding a hearing and directing the parties to conduct further discussions, the parties advised this court of their inability to resolve the matter between themselves. Accordingly, the motions (Docket Entry # 30, 40 & 42) are ripe for review.

### PROCEDURAL BACKGROUND

On February 4, 2003, plaintiff Transwitch Corporation ("Transwitch"), a Delaware business that designs high speed semiconductor products for use by manufacturers of telecommunications equipment,[2] filed a three count patent infringe-

---

1. As explained in footnote four, a portion of this motion is adjudicated as a recommendation under 28 U.S.C. § 636(b)(1)(B).

2. Transwitch has a technical design center in Massachusetts.

ment action against defendant Galazar Networks, Inc. ("Galazar"), a Canadian corporation that develops semiconductor products for use in the telecommunications industry. One such semiconductor product is the MSF 250, described in advertisements as a "system-on-a-chip" framer that offers multiple voice, leased line and data service. (Docket Entry # 41, Ex. A(1) & A(2)). The complaint alleges that Galazar infringes each of the three patents in suit[3] by making and selling communications components covered by the patents "including, but not limited to, the MSF 250." (Docket Entry # 1, ¶¶ 13, 19 & 25). The only infringing product that the complaint identifies is the MSF 250.

Galazar's original answer contained a counterclaim with two counts. Count I sought a declaratory judgment of noninfringement, invalidity and unenforceability of the patents in suit. Count II was an unfair competition claim.

At present, Transwitch seeks leave to amend the complaint to eliminate the patent infringement claims and bring a single count for false advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a) ("section 1125(a)"). (Docket Entry # 40). Indeed, Transwitch states, in no uncertain terms, that it "agrees to not sue Galazar for infringement of any claim of the patents-in-suit based upon the MSF 250 as described in Galazar's MSF 250 Datasheet, version 16 (bearing production nos. G001–609)." (Docket Entry # 41, p. 4). Galazar, however, wishes to press forward with Count I of the counterclaim alleging noninfringement, invalidity and unenforceability and also seeks leave to file an amended answer adding a third counterclaim for sham litigation under the antitrust laws. (Docket Entry # 30). Transwitch, in turn, moves to dismiss Count I

of the counterclaim as nonjusticiable. (Docket Entry # 42).

Transwitch based the allegations of infringement in the original complaint upon the description of the MSF 250 published on Galazar's website in January 2003. The website described the MSF 250 as, *inter alia,* "the world's first device to simultaneously support mixed High–Order (STS/VC paths) and Low–Order (VT/VC paths) Virtual Concatenation (VC) with Link Capacity Adjustment Scheme (LCAS)." (Docket Entry # 41, Ex. B). According to Transwitch, the statement, as well as others on the website, conveyed a reasonable belief that the MFS 250 product was capable of cross connecting signals at the virtual tributary level.

After Transwitch filed suit, Galazar's counsel declined Transwitch's entreaty to describe its noninfringement position with greater clarity than the description provided in an April 17, 2003 filing. The filing asserted noninfringement because the Galazar product, i.e., the MSF 250 product, "does not cross-connect any signals that contain any Al or A2 overhead bytes," which the patents in suit require and subsume within the definition of " 'substantially SONET formatted signals.' " (Docket Entry # 9, pp. 1 & 5). Galazar accurately explained that the patents in suit uniformly define the key term, "substantially SONET formatted signals," as "a signal in SONET form having its virtual tributaries as well as at least the A1, A2, H1, H2, and H4 overhead bytes defined." (Docket Entry # 9, p. 5). Galazar stressed that the Galazar product did not fall within this definition because it did not cross connect "signals that contain any A1 or A2 overhead bytes." (Docket Entry # 9, p. 5).

---

**3.** The complaint alleges infringement of three Transwitch patents with each count alleging the infringement of one of the three patents.

In lieu of immediately dismissing the patent infringement claims, Transwitch served Galazar with discovery requests in the spring of 2003. On June 9, 2003, Transwitch provided Galazar with claim construction charts that only generally depicted the claim language and the corresponding features of the MSF 250 product. In September 2003, after raising initial objections, Galazar allowed Transwitch's technical consultant access to Galazar's confidential material. In October 2003, after the consultant reviewed the documents, Transwitch complained that the document production did not completely describe the MSF 250 product. In response, Galazar produced additional documentation in late November 2003 including, for the first time, the MSF 250 Datasheet, according to Transwitch.

## I. TRANSWITCH'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT (DOCKET ENTRY # 40)[4]

Galazar submits that the relevant legal framework to review the portion of Transwitch's motion that seeks dismissal of the patent infringement counts is Rule 41(a)(2), Fed.R.Civ.P. ("Rule 41(a)(2)"). Transwitch contends that Rule 15(a), Fed. R.Civ.P. ("Rule 15(a)"), applies to the motion to amend.

Galazar further urges this court to dismiss the patent infringement counts with prejudice and urges that the dismissal should apply to "all accused Galazar products." With respect to the false advertising count, Galazar submits that the claim is futile and unduly prejudicial and that Transwitch unduly delayed bringing the claim and acted with an improper motive. This court addresses the arguments *seriatim.*

By its terms, Rule 41(a)(2) applies to the dismissal of "an action." Fed.R.Civ.P. 41(a)(2). Consequently, the weight of authority is that Rule 15(a), as opposed to Rule 41(a)(2), applies to an amendment which drops some but not all of the claims in an action. *Addamax Corporation v. Open Software Foundation, Inc.,* 149 F.R.D. 3, 5 (D.Mass.1993) (Rule 15(a) "is the proper vehicle to drop some but not all claims against a defendant or defendants"); *accord Gronholz v. Sears, Roebuck and Co.,* 836 F.2d 515, 517–518 (Fed. Cir.1987); *Chavez v. Illinois State Police,* 1999 WL 754681 at * 2 (N.D.Ill. Sept.9, 1999) ("focusing on the distinction between dismissing a claim and an entire case, courts have approved the use of Rule 15(a), rather than Rule 41(a)(2), to dismiss 'a claim, as opposed to an action' "); *Bragg v. Robertson,* 54 F.Supp.2d 653, 660 (S.D.W.Va.1999) (Rule 15 applies when the plaintiff seeks to dismiss only some counts against the defendant); *Bibbs v. Newman,* 997 F.Supp. 1174, 1177 (S.D.Ind.1998) (parenthetically quoting treatise that " 'Rule 41(a) applies only to the dismissal

---

4. This court has "the authority to decide the motion[s] to amend outright" under 28 U.S.C. § 636(b)(1)(A). *Maurice v. State Farm Mutual Automobile Insurance Co.,* 235 F.3d 7, 9 n. 2 (1st Cir.2000) (referring to a motion for leave to file an amended complaint). The motion to amend (Docket Entry # 40), however, seeks to eliminate all of the counts in the original complaint and then to amend the complaint to include a false advertising count. More significantly, in opposing the motion to amend, Galazar asks this court to dismiss the patent infringement claims with prejudice. Consequently, the decision on that portion of the motion to amend which seeks to dismiss or drop the patent infringement claims is issued in the form of a report and recommendation. See *Trinidad–Delgado v. SK & F Lab Company,* 992 F.2d 1, 2 (1st Cir.1993); *see, e.g., Addamax Corporation v. Open Software Foundation, Inc.,* 149 F.R.D. 3, 6 n. 4 (D.Mass.1993) (noting that, "A magistrate judge could issue a report and recommendation rather than an order on the motion to amend and recommend that the motion be allowed on condition that claims not reasserted in the amended complaint are dismissed with prejudice").

of all claims in an action" '' whereas a " 'plaintiff who wishes to drop some claims but not others should do so by amending his complaint pursuant to Rule 15' ").

In the case at bar, however, Transwitch seeks to drop all of the counts in the original complaint. Review is therefore properly gauged under Rule 41(a)(2).[5]

A decision under Rule 41(a)(2) is "committed to the discretion of the court." *Holbrook v. Andersen Corporation*, 130 F.R.D. 516, 519 (D.Me.1990) (discussing Rule 41(a)(2)). The "principal consideration is whether the dismissal would prejudice the defendant." *Schwarz v. Folloder*, 767 F.2d 125, 129 (5th Cir.1985) (if dismissal unfairly prejudices a defendant, it should be denied). Stated otherwise, dismissal serves the "basic purpose" of Rule 41(a)(2) "so long as no other party will be prejudiced." *Holbrook v. Andersen Corporation*, 130 F.R.D. at 519.

Unfortunately for Galazar, "Neither the prospect of a second suit nor a technical advantage to the plaintiff should bar the dismissal." *Puerto Rico Maritime Shipping Authority v. Leith*, 668 F.2d 46, 50 (1st Cir.1981). In any event, the prospect of such a suit is highly unlikely because Transwitch "agrees to not sue Galazar for infringement of any claim of the patents-in-suit based upon the MSF 250." (Docket Entry # 41, p. 4).

Various factors to consider under Rule 41(a)(2) include "the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action" as well as "insufficient explanation for the need to take a dismissal." *Palmer v. Wells*, 2004 WL 1790180 at * 6 (D.Me. Aug. 11, 2004) (internal quotation marks omitted). Galazar complains, albeit without sufficient detail, that it has incurred "substantial time and expense in defending" against the patent infringement claims. Dispositive motions, however, have not been filed. By January 2004, it was apparent that Transwitch was seeking to withdraw the patent infringement claims and, thus, Galazar would not incur significant future expenses after January 2004 relative to these claims. As of January 2004, there is no indication that experts had been deposed or reports prepared inasmuch as the close of expert discovery at that time was June 2, 2004. Contrary to Galazar's assertions, this case has not "progressed substantially" relative to the patent infringement claims and the time and expense incurred by Galazar are not so significant as to warrant a dismissal with prejudice. Indeed, in an October 27, 2003 filing, Galazar admits that, "Formal discovery has commenced, but is in its early stages." (Docket Entry # 31, p. 16).

Galazar's assertion that Transwitch has not litigated the patent infringement claims in good faith or with diligence also lacks credence. It is true that this court can consider and has considered Transwitch's good faith in the course of deciding whether to dismiss the patent infringement claims with prejudice. *See Puerto Rico Maritime Shipping Authority v. Leith*, 668 F.2d at 49–50 (noting that "record indicates ample grounds on which the

---

5. Whether to review the motion under Rule 41(a)(2) or Rule 15(a) is academic inasmuch as "a district court may permit withdrawal of a claim under Rule 15 ... subject to the same standard of review as a withdrawal under Rule 41(a)." *Wakefield v. Northern Telecom, Inc.*, 769 F.2d 109, 114 n. 4 (2d Cir.1985); accord *Chambers v. Time Warner, Inc.*, 2003 WL 1107790 at * 2 (S.D.N.Y. March 12, 2003) ("[i]n all respects here relevant, a Rule 15(a) amendment eliminating a claim is the same as a Rule 41(a) voluntary dismissal of the claim"). Applying either rule, this court would reach the same result and recommend the dismissal of the patent infringement counts without prejudice.

district court could conclude that the plaintiff has acted in good faith" in context of reviewing Rule 41(a)(2) dismissals). Transwitch did not delay seeking the amendment dropping the patent infringement counts. Rather, it acted relatively soon after Galazar produced the pertinent documentation. Transwitch also adequately explains the reason for not dropping the claims at an earlier date, to wit, Galazar's delay in allowing Transwitch's technical consultant access to the relevant documentation in addition to other discovery tactics.

Galazar next submits that the dismissal should apply to "all accused Galazar products." The argument is not well taken. Although the original complaint globally encompasses Galazar "communications components" covered by the patents in suit, the complaint only identifies by name the MSF 250. That said, in answer to an interrogatory, Galazar identifies the MSF 250 as products under codes "GLZ3300–01–CSBI (Code Names: Mercury, Mars), MSF–250, PP250CPE, MSF UMAP, MSF252, MSF–252, MSF 252, MSF TE, MSF UNI, MSF EMPX, EOS250, POS250, DSF250, DSF–250, DSF 250, LO-TUS, MSF15, MSF–15 and MSF 15." (Docket Entry # 41, Ex. E). Hence, the dismissal, albeit without prejudice, which applies to the MSF 250, includes the products under these codes.

■ Turning to the propriety of allowing an amendment of the complaint to include a false advertisement and unfair competition claim, Galazar objects to the amendment on the basis of futility, undue prejudice, undue delay and bad faith.

Leave to amend under Rule 15 " 'is freely given when justice so requires' " absent an adequate basis to deny amendment such as futility, bad faith, undue delay or a dilatory motive. *Maine State Building and Construction Trades Council, AFLCIO v. United States Department of Labor,* 359 F.3d 14, 19 (1st Cir.2004); *Glassman v. Computervision Corp.,* 90 F.3d 617, 622 (1st Cir.1996). Futility of a proposed amendment "is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6)." *Hatch v. Department for Children, Youth and Their Families,* 274 F.3d 12, 19 (1st Cir.2001). In such circumstances, "amendment is not deemed futile as long as the proposed amended complaint sets forth a general scenario which, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory." *Hatch v. Department for Children, Youth and Their Families,* 274 F.3d at 19; *see also Garrett v. Tandy Corporation,* 295 F.3d 94, 105 (1st Cir.2002) (at the Rule 12(b)(6) stage "it is enough for a plaintiff to sketch a scenario which, if subsequently fleshed out by means of appropriate facts, could support an actionable claim").

Galazar initially attacks the proposed amendment because it fails to allege the necessary element that "the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product." *Cashmere & Camel Hair Manufacturers v. Saks Fifth Avenue,* 284 F.3d 302, 310–311 (1st Cir.), *cert. denied,* 537 U.S. 1001, 123 S.Ct. 485, 154 L.Ed.2d 396 (2002). Galazar also correctly delineates this element as requiring the plaintiff to establish "either that the defendant's advertisement is literally false or implicitly false—that is, the advertisement is true or ambiguous yet misleading." *Cashmere & Camel Hair Manufacturers v. Saks Fifth Avenue,* 284 F.3d at 311.

The proposed amended complaint, however, satisfies the Rule 15(a) threshold. Paragraph 15 alleges that, "Galazar's past and present website advertisements explicitly and implicitly convey, among other things, that the MSF 250 framer is capable

of cross-connecting SONET signals on the low order virtual tributary, or VT, level." (Docket Entry # 41, Ex. A). Paragraph 16 then notes that, "In contrast to this advertising, Galazar has alleged in this lawsuit that its MSF 250 framer is not capable of cross-connecting SONET signals at the virtual tributary level." (Docket Entry # 41, Ex. A). These and other paragraphs of the proposed amended complaint adequately plead a false advertising claim sufficient to withstand a Rule 12(b)(6) motion to dismiss. Further, the description of the claim in an if/then hypothetical manner is entirely permissible.[6] See Fed.R.Civ.P. 8(e)(2) ("party may set forth two or more statements of a claim ... hypothetically").

Galazar additionally contends that Transwitch lacks standing to assert the claim because Galazar has not yet sold any commercial units of the MSF 250 product to a consumer in the United States. Of the three cases that Galazar relies upon, two cite or rely upon the pre-amendment version of section 43(a), 15 U.S.C. § 1125(a) (1946). See Lang v. Pacific Marine & Supply Co., 895 F.2d 761, 765 (Fed.Cir. 1990) (quoting pre–1988 version of section 43(a)); Wobble Light, Inc. v. McLain/Smigiel Partnership, 890 F.Supp. 721, 725 (N.D.Ill.1995) (relying on cases that themselves rely on pre–1988 case law). The other case did not address whether the defendant advertised the books containing the purportedly false statements. See Schwasinger v. Price, 789 F.Supp. 347, 352 (D.Kan.1992) (allowing summary judgment because the "two manuscripts have not been published and have not entered into commerce"). In any event, relying on the elements of a false advertising claim as set forth by the First Circuit in Cashmere, the proposed amended complaint satisfies, for purposes of the liberal pleading standards embodied in Rule 15(a), the required element that "the defendant place[ ] the false or misleading statement in interstate commerce." Cashmere & Camel Hair Manufacturers v. Saks Fifth Avenue, 284 F.3d at 311. Although Galazar presents a viable argument, it is better addressed on summary judgment.

Galazar's allegations of undue prejudice and undue delay lack merit. The false advertising claim concerns the MSF 250 product as advertised on Galazar's website and thereby complements the discovery engaged in by the parties to date. Galazar's prejudice is not undue. As Galazar acknowledges, although "formal discovery has commenced," it "is in its early stages." (Docket Entry # 31, p. 16).

The delay also fails to justify denying the amendment. In this circuit,[7] "When considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has the burden of showing some valid reason for his neglect and delay." Acosta–Mestre v. Hilton International of Puerto Rico, 156 F.3d 49, 52 (1st Cir.1998) (internal quotation marks omitted). Transwitch had little reason to immediately suspect the falsity of the representations of the MSF 250 product on the website. The delay in seeking amendment is further justified given the scheduling deadlines set by this court, the course of discovery and the unveiling of the parties' positions. Finally, Galazar's assertion of an improper motive on the part of Transwitch is unconvincing.

---

6. Galazar's assertion that Transwitch violated Rule 11, Fed.R.Civ.P., is not set forth in a separate motion. See Fed.R.Civ.P. 11(c)(1).

7. "Amendment under Rule 15(a) is a procedural matter not peculiar to patent law." Rambus, Inc. v. Infineon Technologies, 304 F.Supp.2d 812, 819 n. 11 (E.D.Va.2004). Hence, the law of the regional circuit applies. Id.

## II. TRANSWITCH'S RULE 12(B)(1) MOTION TO DISMISS GALAZAR'S DECLARATORY JUDGMENT ACTION FOR LACK OF SUBJECT MATTER JURISDICTION (DOCKET ENTRY # 42)

■ Transwitch moves to dismiss Count I of the counterclaim under Rule 12(b)(1), Fed.R.Civ.P., because there is no longer an actual controversy between the parties. (Docket Entry # 42). In light of Transwitch's agreement not to sue Galazar for infringement of the patents in suit based upon the MSF 250 product and the Federal Circuit's decision in *Super Sack Manufacturing Corporation v. Chase Packaging Corporation*, 57 F.3d 1054 (Fed.Cir.1995) (dismissing declaratory judgment counterclaim for noninfringement and invalidity due to absence of justiciable controversy after patentee's counsel represented in a brief that Super Sack would not sue Chase for infringement of the patents in suit), the argument is well taken.

Count I "arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202" (Docket Entry # 5, ¶ 8) and seeks a declaratory judgment of noninfringement, invalidity and unenforceability of the patents in suit. It alleges that a justiciable controversy exists "as evidenced, inter alia, by the Complaint and Answer in this action." (Docket Entry # 5, ¶ 8).

The Declaratory Judgment Act, requires an "actual controversy" between the interested parties. 28 U.S.C. § 2201(a). Moreover, this "jurisdictional predicate" must exist " 'at all stages of review, not merely at the time the complaint is filed.' " *Super Sack Manufacturing Corporation v. Chase Packaging Corporation*, 57 F.3d at 1058 (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975)). The burden is upon Galazar not only to establish the existence of jurisdiction at the time it filed the counterclaim in February 2003 but also to establish that jurisdiction "has continued since[ ] the time the counterclaim was filed." *Super Sack Manufacturing Corporation v. Chase Packaging Corporation*, 57 F.3d at 1058 (internal brackets omitted).

In determining the existence of an actual controversy when declaring patent rights, a two part test applies. *Super Sack Manufacturing Corporation v. Chase Packaging Corporation*, 57 F.3d at 1058. Viewed under " 'the "totality of the circumstances," ' " the test requires " 'both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity.' " *Super Sack Manufacturing Corporation v. Chase Packaging Corporation*, 57 F.3d at 1058. In *Super Sack*, the patentee's counsel agreed in a brief not to sue Chase for infringement with respect to the patents in suit based upon the products currently manufactured by Chase. *Super Sack Manufacturing Corporation v. Chase Packaging Corporation*, 57 F.3d at 1056. Based upon this representation, the Federal Circuit in *Super Sack* concluded that Super Sack was estopped from asserting liability against Chase for products made before the date of the brief. The estoppel removed any reasonable apprehension on the part of Chase that it would face an infringement suit on the patents in suit with respect to past and present products. The Federal Circuit therefore upheld the trial court's dismissal of the counterclaim as nonjusticiable. *Super Sack Manufacturing Corporation v. Chase Packaging Corporation*, 57 F.3d at 1059–1060.

The analysis is equally applicable to the case at bar. Transwitch made a number of representations (Docket Entry # 43, p. 6; Docket Entry # 41, p. 4; Docket Entry # 52, p. 11; Docket Entry # 50, Ex. A, p. 1) agreeing not to sue Galazar for infringe-

ment of the patents in suit with respect to the accused product. In no uncertain terms, Transwitch states that its covenant not to sue "encompasses *all* of the accused products in this lawsuit." (Docket Entry # 50, Ex. A, p. 1). The representations therefore extend to the MSF 250 described by Galazar in answer to the interrogatory and the product depicted in the MSF Datasheet, version 16. Transwitch is therefore estopped from asserting infringement of the patents in suit as to all of the accused products in this lawsuit, including the foregoing products.

The representations remove any reasonable apprehension that Galazar will face an infringement suit in the future. Given Transwitch's statements, the averment of Galazar's Chief Executive Officer to the contrary (Docket Entry # 48, Ex. A) falls flat.[8] The fact that the recommended Rule 41(a)(2) dismissal of the infringement claims is without prejudice does not bypass the estoppel or otherwise resurrect a reasonable apprehension. The promises are also decidedly more encompassing than the narrow scope Galazar ascribes to them (Docket Entry # 48, pp. 8–11).

Galazar's reliance on the decision of *Farmaceutisk Laboratorium Ferring A/S v. Solvay Pharmaceuticals Inc.*, 25 U.S.P.Q.2d 1344, 1992 WL 421542 (N.D.Ga.1992), is misplaced. Not only does the case predate the *Super Sack* decision but the representation at issue in *Farmaceutisk* extended only as far as the safe harbor provisions of 35 U.S.C. § 271(e)(1). The *Farmaceutisk* representation was therefore significantly less encompassing than the representations in the case at bar. *See Farmaceutisk Laboratorium Ferring A/S v. Solvay Pharmaceuticals Inc.*, 25 U.S.P.Q.2d at 1348 ("nonliability statement appears to protect Sol-

vay only so long as it continues to produce its product for federal testing purposes").

Galazar fails in its burden of showing a continuing actual controversy. Although one existed at the time Galazar filed the counterclaim, Transwitch's subsequent representations belie the existence of a reasonable apprehension on the part of Galazar that it will face a suit that the accused products infringe the patents in suit.

### III. *DEFENDANT'S MOTION FOR LEAVE TO FILE AN AMENDED ANSWER AND COUNTERCLAIM (DOCKET ENTRY # 30)*

Galazar seeks leave to file an amended answer and counterclaim. The original answer and counterclaim included two counts. Count I is presently subject to the recommended dismissal under Rule 12(b)(1), Fed.R.Civ.P. Count II is for unfair competition.

Eight months after filing the original counterclaim, Galazar seeks leave to include a third count for sham litigation under the Sherman Act, 15 U.S.C. §§ 1 and 2. Transwitch objects.

Galazar also seeks to amend the answer to include the affirmative defenses of patent misuse and unenforceability as well as additional allegations relative to the new count and the new affirmative defenses. Other than the newly proposed Count III, Transwitch "does not oppose the remainder of Galazar's proposed amendments to the extent such amendments do not rely on or feature" the antitrust allegations. (Docket Entry # 35, n. 1). Nevertheless, the proposed affirmative defenses appear moot given the present posture of this case as including only the single count for false advertising and unfair competition. Leave to amend the answer to include the new

---

**8.** This recommendation, based on the present facts, does not preclude Galazar from establishing an actual controversy in the future if, for example, Transwitch acts in a manner contrary to its present representations.

affirmative defenses is therefore denied without prejudice. Galazar may refile the motion subject to presenting a further argument demonstrating that the defenses are not moot. In order to avoid a waiver, any such motion should be filed by October 22, 2004.

Turning to the newly proposed count for sham litigation, Transwitch contends it is futile. Futility constitutes an adequate basis to deny leave to amend the counterclaim and is judged by the standard applicable to a Rule 12(b)(6) motion to dismiss.[9] *See Cabana v. Forcier,* 200 F.R.D. 9, 13 (D.Mass.2001) (recognizing that futility constitutes an adequate basis to deny amendment in the context of addressing a motion for leave to amend an answer to include a counterclaim); *accord FilmTec Corporation v. Hydranautics,* 67 F.3d 931, 939 (Fed.Cir.1995) (affirming denial of leave to amend to include counterclaim of sham litigation given futility of claim); 3 James Wm. Moore *Moore's Federal Practice* § 13.43[1] (2004) ("court may deny a motion to amend if the counterclaim is meritless and the amendment would prove futile").

As previously explained, futility is gauged against the standard applicable to a Rule 12(b)(6) motion to dismiss. The facts, and reasonable inferences therefrom, in the counterclaim are considered true for purposes of the present motion. In addition, documents outside the framework of the pleading are not considered when issuing a ruling on a motion for leave to amend an answer to include a counterclaim. *See Enervations, Inc. v. Minnesota Mining and Manufacturing Company,* 380 F.3d 1066 (8th Cir.2004);[10] *Permatex, Inc. v. Loctite Corporation,* 2004 WL 1354253 at * 3 (S.D.N.Y. June 17, 2004) (refusing to consider documents outside the pleadings in the course of deciding motion for leave to amend answer to include new counterclaims). It is therefore inappropriate to consider the declaration of Richard Deboer ("Deboer declaration"). (Docket Entry # 58).

As pointed out by Transwitch, Count III is deficient with respect to stating a section 1 Sherman Act claim under *Monsanto Co. v. Spray–Rite Service Corporation,* 465 U.S. 752, 761, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984). More specifically, Galazar fails to allege the necessary "concerted action between two or more separate parties." *Podiatrist Association, Inc. v. La Cruz Azul De Puerto Rico, Inc.,* 332 F.3d 6, 12 (1st Cir.2003). Although a person may participate involuntarily or by coercion, *see MCM Partners v. Andrews–Bartlett & Associates,* 62 F.3d 967, 973–974 (7th Cir. 1995); *see also Spectators' Communication Network, Inc. v. Colonial Country Club,* 253 F.3d 215, 220–221 (5th Cir.2001), the proposed counterclaim fails to set forth

---

**9.** In making the motion, Galazar relies upon Rule 15. Neither party cites or relies upon Rule 13(f), Fed.R.Civ.P. ("Rule 13(f)"). Rule 13(f), however, provides that, "When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment." The rule is liberally interpreted and " 'amendment is freely granted in order to settle all claims in one action.' " *Cabana v. Forcier,* 200 F.R.D. at 13. Assessing excusable neglect typically involves considering the claimant's good faith, the "extent of the delay" and "the danger of prejudice to the opposing party." *Cabana v. Forcier,* 200 F.R.D. at 13 (citing *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership,* 507 U.S. 380, 392 n. 10, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)). Justice requires allowance of the amendment under Rule 13(f). Examining the proposed count for sham litigation, it is made in good faith and the prejudice resulting from additional discovery does not warrant denying the amendment.

**10.** Publication page numbers are not yet available for this opinion.

a general scenario to support the existence of the aforementioned element of a "concerted action between two or more separate parties."[11] *Podiatrist Association, Inc. v. La Cruz Azul De Puerto Rico, Inc.,* 332 F.3d at 12. With respect to an actual or attempted monopolization claim under section 2 of the Sherman Act, *see generally Boston Scientific Corporation v. Schneider (Europe) AG,* 983 F.Supp. 245, 268 (D.Mass.1997) (stating elements of such claims), it also behooves Galazar to more specifically set out the market.[12]

Mindful that dismissing an antitrust claim before " 'giving the plaintiff ample opportunity for discovery should be granted sparingly,' " *Podiatrist Association, Inc. v. La Cruz Azul De Puerto Rico, Inc.,* 332 F.3d at 13 (quoting *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 746, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976)), this court will allow Galazar a further opportunity to plead the above claim. Galazar may therefore file a second motion for leave to file an amended answer and counterclaim in accordance with the constructs of this opinion on or before October 12, 2004.

That said, and in order to avoid revisiting the issue, the present counterclaim adequately sets forth facts falling within the sham litigation exception to the general immunity afforded antitrust and other litigants petitioning the government for redress. (Docket Entry # 30, Ex. A, ¶¶ 13–14, 16 &·25); *see, e.g., Honeywell Consumer Products, Inc. v. Windmere Corporation,* 993 F.Supp. 22, 23–24 (D.Mass.1998) (denying motion to dismiss antitrust counterclaim under Rule 12(b)(6) against assertion that the *Noerr–Pennington* doctrine[13] bars the claim); *Skinder–Strauss Associates v. Massachusetts Continuing Legal Education, Inc.,* 870 F.Supp. 8, 10 (D.Mass.1994) (denying motion to dismiss under *Noerr–Pennington* immunity doctrine inasmuch as counterclaim alleging that lawsuit was "objectively baseless and conceals attempt to interfere directly with the business relationships of a competitor" fell within sham litigation exception); *see generally Moore U.S.A., Inc. v. Standard Register Co.,* 139 F.Supp.2d 348, 358–359 (W.D.N.Y.2001) (outlining the *Noerr–Pennington* doctrine and the sham litigation exception to the doctrine).

## CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[14] that

---

**11.** Although the Deboer declaration provides greater specificity (Docket Entry # 58, ¶ 7), it is improper to consider it.

**12.** Although the Deboer declaration more than adequately outlines the relevant market for purposes.of Rule 12(b)(6) (Docket Entry # 58, ¶¶ 2 & 6), *see e.g., Moore U.S.A., Inc. v. Standard Register Co.,* 139 F.Supp.2d 348, 357 (W.D.N.Y.2001) (rejecting argument that claim failed to adequately allege market power inasmuch as counterclaim alleged that "Moore has enjoyed a 65 percent share of the product"), it is improper to consider the document. In contrast to the Deboer declaration, the proposed counterclaim is more general. (Docket 30, Ex. A, ¶ 24).

**13.** The doctrine emanates from the Supreme Court cases of *Eastern R. Presidents Confer-*

*ence v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and *Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), which the Supreme Court more recently discussed in *Professional Real Estate Investors v. Columbia Pictures,* 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993).

**14.** Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order. *United States v. Escoboza Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *United*

the motion for leave to file a first amended complaint (Docket Entry # 40) be **ALLOWED** to the extent of dismissing without prejudice the patent infringement counts in the original complaint. This court also **RECOMMENDS**[15] that Transwitch's motion to dismiss Galazar's declaratory judgment claim in Count I of the counterclaim (Docket Entry # 42) be **ALLOWED**.

The motion for leave to file a first amended complaint (Docket Entry # 40) is **ALLOWED** to the extent of adding the false advertising and unfair competition claim. The motion for leave to file an amended answer and counterclaim (Docket Entry # 30) is **DENIED** without prejudice. Galazar may file a second motion for leave to file an amended answer and counterclaim together with an attached proposed answer and counterclaim and a supporting memorandum on or before October 22, 2004, in conformity with the admonitions in this opinion. The parties shall appear for a status conference to address the discovery schedule on October 25, 2004, at 2:30 p.m.

States v. Valencia–Copete, 792 F.2d 4, 6 (1st Cir.1986).

**15.** See the preceding footnote.