**BOSE CORPORATION, Plaintiff,**

v.

**LIGHTSPEED AVIATION, INC., Defendant.**

**Civil Action No. 09–10222–WGY.**

United States District Court, D. Massachusetts.

March 4, 2010.

Andrew R. Kopsidas, Steven A. Bowers, Fish & Richardson P.C., Washington, DC, Charles Hieken, Fish & Richardson P.C., Boston, MA, for Plaintiff.

John S. Leroy, Marc Lorelli, Mark A. Cantor, Brooks Kushman, P.C., Southfield, MI, Gina M. McCreadie, Mark D. Robins, Nixon Peabody, LLP, Boston, MA, for Defendant.

*MEMORANDUM AND ORDER*

YOUNG, District Judge.

## I. INTRODUCTION

The plaintiff Bose Corporation ("Bose") brought an action against the defendant Lightspeed Aviation, Inc. ("Lightspeed") for patent infringement, claiming that Lightspeed's sales of its Zulu ANR Aviation headset (the "Zulu headset") infringed upon Bose-owned U.S. Patent No. 5,181,-252, entitled "High Compliance Headphone Driving" (the "'252 patent"). Lightspeed filed a counterclaim against Bose, alleging that Bose breached an agreement executed between the two parties to resolve a prior lawsuit. Subsequently, Lightspeed amended its answer to Bose's complaint and added four more counterclaims against Bose. Bose now moves to dismiss three of Lightspeed's four added counterclaims pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f).

### A. Procedural Posture

On February 13, 2009, Bose sued Lightspeed for patent infringement in this Court [Doc. No. 1]. On June 8, 2009, Lightspeed filed its answer to Bose's complaint and filed a counterclaim against Bose for breach of contract [Doc. No. 4]. Bose filed an answer to Lightspeed's breach of contract counterclaim on June 12, 2009 [Doc. No. 12]. On November 13, 2009, Lightspeed filed an amended answer to Bose's complaint and added four new counterclaims against Bose in addition to its breach of contract counterclaim [Doc. No. 28].

On December 3, 2009, Bose moved to dismiss Lightspeed's second, fourth, and fifth counterclaims pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f) [Doc. Nos. 36, 37]. On December 21, 2009, Lightspeed filed an opposition to Bose's motion to dismiss Lightspeed's amended

counterclaims [Doc. No. 39], and Bose replied to Lightspeed's opposition on January 8, 2010 [Doc. No. 41].

## B. Facts

Lightspeed alleges that in 1996 it began using the trademark "QUIET COMFORT" on the packaging and advertising for its aviation headsets. Am. Answer, Counterclaims at ¶ 5. Lightspeed further alleges that Bose filed for and the U.S. Patent & Trademark Office ("PTO") awarded Bose a trademark for the mark "QUIETCOMFORT" in February 2002. Bose subsequently began selling products under this mark. *Id.* ¶¶ 7–9. Following these sales, Lightspeed sued Bose in July 2002 in the District Court of Oregon for trademark infringement. *Id.* ¶¶ 10–11. Lightspeed alleges that it then entered into an agreement with Bose to resolve this lawsuit (the "Settlement Agreement"). *Id.* ¶ 13.

Pursuant to the Settlement Agreement, Lightspeed agreed to phase out its use of the "QUIET COMFORT" trademark. *Id.* ¶ 14. In exchange, Bose agreed "not to sue Lightspeed ... for infringement of any ... patent that is owned by Bose or its affiliates" and also agreed not to assert any currently owned patents against Lightspeed "based on any future improvements of ... ANR models, so long as those improvements bear no material relationship to the claim limitations of the 5,181,252 patent." Lightspeed's Opp'n to Bose's Mot. to Strike Am. Answer, Counterclaims, Ex. 1 at 1. The Settlement Agreement further stated that "future improvements which continue to use the same or essentially the same drivers used in the ANR models and do not relate to structure limiting the maximum excursion of the diaphragm ... are deemed by the parties to bear no material relationship to the claim limitations of the '252 patent." *Id.* at 1–2.

Lightspeed's first counterclaim against Bose alleges that Bose breached the Settlement Agreement by suing Lightspeed for infringement of the '252 patent. Am. Answer, Counterclaims at ¶ 21. Lightspeed added four additional counterclaims to its breach of contract claim when it amended its answer to Bose's complaint on November 13, 2009, and Bose has moved to dismiss three of the four additional counterclaims. Bose's Mot. to Strike Am. Answer, Counterclaims. First, Bose seeks to dismiss Lightspeed's second counterclaim, which requests the Court to issue a declaration canceling Bose's "QUIET-COMFORT" trademark. Bose's Mem. Supp. Mot. to Strike Lightspeed's Am. Answer, Counterclaims at 3. Second, Bose moves to dismiss Lightspeed's fourth counterclaim, which alleges that the '252 patent is unenforceable because Bose made material misrepresentations to the PTO with intent to deceive with respect to the names of inventors on the '252 patent application. *Id.* at 4. Third, Bose seeks to dismiss Lightspeed's fifth counterclaim, which contends that the '252 patent is unenforceable because Bose, with intent to deceive, made a material misrepresentation to the PTO by not disclosing public uses of a particular Bose headset when it applied for the '252 patent. *Id.* at 5–6.

In the alternative to Rule 12(b)(6) dismissal, Bose requests the Court to strike the same three counterclaims under Federal Rule of Civil Procedure 12(f) because Bose alleges that Lightspeed had nearly six months to amend its original answer, and also that Lightspeed's counterclaims are "insufficient" or "immaterial."

## C. Federal Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this

action concerns a federal question of patent law and federal district courts have original jurisdiction in civil actions relating to patents. Additionally, this Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the action arises between citizens of different states and the amount in controversy exceeds $75,000.

## II. ANALYSIS

### A. The Motion to Dismiss

#### 1. Rule 12(b)(6)

In ruling on a motion to dismiss a counterclaim for failure to state a claim upon which relief can be granted, the Court "must accept all factual averments in the counterclaim as true and draw all reasonable inferences in the counterclaimant's favor." *Encompass Ins. Co. of Massachusetts v. Giampa*, 522 F.Supp.2d 300, 305–06 (D.Mass.2007) (Lindsay, J.) (quoting *Brandt v. Advanced Cell Tech. Inc.*, 349 F.Supp.2d 54, 57 (D.Mass.2003) (Gorton, J.)). To survive a motion to dismiss, a complaint must contain enough factual information, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Factual allegations must be sufficient to "raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555, 127 S.Ct. 1955.

The Court ought dismiss a counterclaim if the counterclaimant fails to allege a "plausible entitlement to relief." *See Rodriguez–Ortiz v. Caribe*, 490 F.3d 92, 95 (1st Cir.2007) (quoting *Twombly*, 550 U.S. at 559, 127 S.Ct. 1955). The counterclaimant is obliged to plead "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. The Court is only required to look at the allegations set forth in the counterclaim and must deny a motion to dismiss if, under any theory, the allegations are sufficient to state a cause of action. *See Brandt*, 349 F.Supp.2d at 57 (citing *Knight v. Mills*, 836 F.2d 659, 664 (1st Cir.1987)). The Court may, however, also consider documents that are undisputed and authentic, such as official public records, documents central to the counterclaimant's claim, and documents adequately referred to in the counterclaim. *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir.1993).

#### 2. Rule 12(f)

Federal Rule of Civil Procedure 12(f) allows the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike defenses under Rule 12(f) are generally disfavored; therefore, the Court should grant such motions only when it is "beyond cavil that the defendant could not prevail on [their defenses]." *Honeywell Consumer Prods., Inc. v. Windmere Corp.*, 993 F.Supp. 22, 24 (D.Mass.1998) (Gorton, J.) (quoting *Coolidge v. Judith Gap Lumber Co.*, 808 F.Supp. 889, 893 (D.Me.1992)). One well-known treatise states the following with respect to Rule 12(f) motions: "Motions to strike a defense as insufficient are not favored by the federal courts because of their somewhat dilatory and often harassing character. Thus even when technically appropriate and well-founded, Rule 12(f) motions often are not granted in the absence of a showing of prejudice to the moving party." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1381, at 421–22 (3d ed. 2004); *see also S.E.C. v. Nothern*, 400 F.Supp.2d 362, 364 (D.Mass.2005) (Gorton, J.) (discussing legal standard of review for Rule 12(f) motions).

### B. Timeliness of the Amendment

■ Bose argues that because Lightspeed had nearly six months to amend its original answer and did not do so in a timely manner, the Court should strike the added counterclaims pursuant to Rule 12(f). Bose's Mot. to Strike Lightspeed's Am. Answer, Counterclaims. This argument is without merit. These parties proposed a joint case management schedule pursuant to Local Rule 16.1 in which they proposed November 13, 2009 as the deadline to file amended pleadings [Doc. Nos. 16, 17], and the Court adopted this deadline. Lightspeed filed its amended answer on November, 13, 2009, thus meeting the deadline agreed upon by the parties and adopted by the Court. The amendment was timely.

### C. Counterclaim Count II—Declaration Canceling Bose's "QUIETCOMFORT" Trademark

In its second counterclaim against Bose, Lightspeed alleges that it had senior use of the "QUIET COMFORT" mark to Bose's 2000 application for registration of the trademark "QUIETCOMFORT" because Lightspeed had been using the mark commercially since 1996. Am. Answer, Counterclaims at ¶ 25. Lightspeed also alleges that "[b]ut for the Settlement Agreement . . . Bose's QUIETCOMFORT mark would have been cancelled" in the trademark infringement suit Lightspeed brought against Bose in the United States District Court for the District of Oregon in July 2002, pursuant to 15 U.S.C. § 1119.

*Id.* ¶¶ 26, 10. Section 1119 of Title 15 of the United States Code provides that "[i]n any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." Lightspeed asserts that it is entitled to cancelation "as a direct and proximate result of Bose's material breach of the Settlement Agreement" and requests this Court to cancel Bose's "QUIETCOMFORT" registration pursuant to 15 U.S.C. § 1119. Am. Answer, Counterclaims at ¶ 27.

The language quoted from Paragraph 27 of Lightspeed's second counterclaim indicates that breach of contract is Lightspeed's legal basis for asking the Court to cancel Bose's Trademark Registration No. 2,539,951 (the "'951 trademark").[1] Breach of contract may not, however, be a legal theory upon which the Court can grant relief by canceling Bose's "QUIETCOMFORT" mark. Lightspeed's allegation in its counterclaim that its "QUIET COMFORT" mark was senior to Bose's application for "QUIETCOMFORT" trademark registration is assumed to be true under the applicable standard of analysis. The PTO, however, awarded the '951 trademark to Bose for its "QUIETCOMFORT" trademark in 2002. Am. Answer, Counterclaims at ¶ 9. Registration allowed Bose to use the mark commercially for a period over five years, thus rendering the trademark "incontestable" under 15 U.S.C.

---

**1.** Lightspeed, however, denies that breach of contract is the basis for its request for cancelation in a later filing. *See* Lightspeed's Opp. to Bose's Mot. to Strike Lightspeed's Am. Answer, Counterclaims at 4. Despite Lightspeed's denial in this subsequent filing, the standard of analysis for Rule 12(b)(6) motions requires the Court to look at the allegations set forth in the counterclaim, and the Court must grant a motion to dismiss if the counterclaimant fails to allege a plausible entitlement to relief in the counterclaim. *See* Section II.A., *supra.* Therefore, the Court must look to Lightspeed's assertions in its *counterclaim*, and not in its *opposition* to determine whether Lightspeed pleaded a plausible entitlement to relief.

§ 1065. Section 1065 provides that "the right of the registrant to use such registered mark in commerce for the goods or services on or in connection with which such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce, shall be incontestable." 15 U.S.C. § 1065.

"Incontestable" status is subject to nine defenses or defects, including fraudulent procurement, abandonment, the claim that the mark is generic, and equitable principles. 15 U.S.C. § 1115(b). Incontestability is not subject to a breach of contract defense. *See id.* Lightspeed argues in its *opposition* that it may prevail on its second counterclaim based on the "equitable principles" exception found in 15 U.S.C. § 1115(b)(9), which provides that a party may defend against an incontestable trademark if "equitable principles, including laches, estoppel, and acquiescence, are applicable." Lightspeed, however, fails to plead this "equitable principles" relief theory in its *counterclaim* and instead indicates breach of contract is the legal basis for relief when it asserts, *"[a]s a direct and proximate result of Bose's material breach of the Settlement Agreement,* Lightspeed is entitled to a determination by this Court cancelling Bose's QUIETCOMFORT registration ... pursuant to 15 U.S.C. § 1119." Am. Answer, Counterclaims at ¶ 27 (emphasis added). Further, Lightspeed does not reference 15 U.S.C.

§ 1115 in its counterclaim, nor does Lightspeed invoke any of the equitable principles listed in 15 U.S.C. § 1115(b)(9), such as laches, estoppel, or acquiescence in its pleading. Lightspeed cites only to 15 U.S.C. § 1119, quoted in pertinent part above.

Lightspeed fails to allege a "plausible entitlement to relief" required to survive a Rule 12(b)(6) motion to dismiss because breach of contract is not a legal basis for this Court to cancel Bose's incontestable "QUIETCOMFORT" trademark registration. Lightspeed argues an "equitable principles" exception to 15 U.S.C. § 1115 in its subsequently filed opposition to Bose's answer, but Lightspeed fails to plead this theory in its second counterclaim. Accordingly, this Court GRANTS Bose's motion to dismiss Lightspeed's second counterclaim for failure to state a claim upon which relief can be granted.

### D. Counterclaim Count IV—Unenforceability of the '252 Patent (I)

Lightspeed alleges in its fourth counterclaim that Bose's '252 patent is unenforceable due to material misrepresentations made by Bose to the PTO with an intent to deceive. Am. Answer, Counterclaims at ¶ 33. Lightspeed alleges that the patent application named Roman Sapiejewski and John Breen as co-inventors when Bose originally filed the '252 patent application.[2]

---

**2.** In its counterclaim, Lightspeed states that Bose filed the application for the '252 patent on October 16, 1991. Am. Answer, Counterclaims at ¶ 35. This date seems to be an error, however, because Lightspeed alleges that Bose sought to remove one of the two inventors from its '252 patent application in a petition filed June 6, 1991, a date prior to October 16, 1991. Am. Answer, Counterclaims at ¶ 39. It does not logically follow that Bose would petition to remove an inventor from a patent application before it filed the application. The October 16, 1991 date is

likely a clerical error that is found on an exhibit of a PTO document. Lightspeed's Opp'n to Bose's Mot. to Strike Lightspeed's Am. Answer, Counterclaims, Ex. 6. The correct filing date of the '252 patent application is likely August 23, 1989, a date listed as the filing date on several other PTO documents, including Exhibits 2, 3, and 4 to Lightspeed's opposition.

Pursuant to Rule 12(b)(6), this Court may consider these exhibits as part of Lightspeed's counterclaim because they are official, au-

*Id.* ¶ 35. Lightspeed claims that the PTO rejected two claims of Bose's '252 patent application on September 5, 1990. *Id.* ¶ 36.

Lightspeed alleges that on December 5, 1990, Bose's attorney Charles Hieken filed an amendment during prosecution of the '252 patent claiming priority to the '252 patent's parent patent—the '542 patent— which the PTO rejected on March 16, 1991. *Id.* ¶ 38. Specifically, Lightspeed claims that the PTO rejected Bose's priority claim in the '252 patent to the '542 patent because the '252 patent listed both Roman Sapiejewski and John Breen as inventors, while the '542 patent only listed Roman Sapiejewski.[3] *Id.* Lightspeed claims that on June 6, 1991 Bose's attorney filed an amendment canceling a claim of the '252 patent and petitioned to delete John Breen as a named inventor. *Id.* ¶ 39. Lightspeed asserts that Bose subsequently admitted that John Breen was an inventor of at least one claim of the '252 patent; therefore, Bose intentionally deceived the PTO by petitioning to remove Breen as inventor on the '252 patent application just to overcome a prior art rejection. *Id.* ¶¶ 41–43.

 Patent applicants have a duty to prosecute patent applications with candor, good faith, and honesty. *Akamai Techs., Inc. v. Limelight Networks, Inc.,* 614 F.Supp.2d 90, 101 (D.Mass.2009) (Zobel, J.) (setting forth legal standard for inequitable conduct); *see Massachusetts Eye and Ear Infirmary v. QLT Photothera-peutics, Inc.,* 412 F.3d 215, 236 n. 12 (1st Cir.2005) (analogizing to doctrine of inequitable conduct); *see also* 37 C.F.R. § 1.56 (describing duty to disclose information material to patentability). Breaching this duty constitutes inequitable conduct, thus rendering a patent unenforceable. *See Digital Equip. Corp. v. Diamond,* 653 F.2d 701, 710 (1st Cir.1981) ("It is thus well established that a patent is rendered unenforceable by inequitable conduct. . . ."); *Akamai,* 614 F.Supp.2d at 101 (discussing patent unenforceability due to inequitable conduct); *see also Impax Labs., Inc. v. Aventis Pharms., Inc.,* 468 F.3d 1366, 1374 (Fed.Cir.2006) (setting forth the elements of inequitable conduct). Inequitable conduct includes failure to disclose material information, affirmative misrepresentations of a material fact, or submission of false material information, coupled with an intent to deceive. *See Akamai,* 614 F.Supp.2d at 101 (citing *Impax Labs.,* 468 F.3d at 1374) (describing legal standards for inequitable conduct); *Perseptive Biosystems, Inc. v. Pharmacia Biotech, Inc.,* 225 F.3d 1315, 1318 (Fed.Cir.2000) (discussing elements of inequitable conduct).

 Assuming "all factual averments in the counterclaim as true" pursuant to Rule 12(b)(6), Lightspeed has alleged a plausible entitlement to relief by alleging inequitable conduct on the part of Bose, thus stating a claim upon which relief can be granted.

thentic, undisputed documents that are central to Lightspeed's counterclaim. *See supra* Part II.A. Therefore, the Court may assume that Bose filed the '252 patent application with two inventors named before it petitioned to remove one of the inventors from the application.

Furthermore, Lightspeed subsequently refers to the date August 23, 1989 in its fifth counterclaim, and one can infer from the context that Lightspeed is referencing the date Bose filed the '252 patent application. Am. Answer, Counterclaims at ¶¶ 51–52.

**3.** A patent applicant may defeat a prior art rejection by the PTO if the inventor seeking patent protection is the same inventor of the prior art. *See* 37 C.F.R. § 1.104(c)(4) (providing reasons for patent examiner's rejection of claims, including rejection for prior art "unless the entire rights to the subject matter and the claimed invention were commonly owned by the same person . . .").

Accordingly, this Court DENIES Bose's motion to dismiss Lightspeed's fourth counterclaim.

Considering Bose's Rule 12(f) motion in the alternative, the Court likewise DENIES Bose's motion to strike Lightspeed's fourth counterclaim due to insufficiency because Bose has failed to demonstrate prejudice under this claim, and has similarly failed to show that it is "beyond cavil" that Lightspeed could not prevail on its claim.

### E. Counterclaim Count V–Unenforceability of the '252 Patent (II)

In its fifth counterclaim, Lightspeed alleges that the '252 patent is unenforceable because Bose made a material misrepresentation with an intent to deceive the PTO. Am. Answer, Counterclaims at ¶ 52. Lightspeed alleges that Bose violated 35 U.S.C. § 102(b) by failing to disclose "various public uses, displays and demonstrations" of a Bose noise-canceling headset ("the Voyager headset") that allegedly incorporated the invention underlying the '252 patent. *Id.* Section 102 provides that "a person shall be entitled to a patent, unless ... the invention was ... in public use or sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102. As discussed in Part II.D. above, a material misrepresentation coupled with an intent to deceive constitutes inequitable conduct, which would render a patent unenforceable. *See Akamai,* 614 F.Supp.2d at 101; *see also Impax,* 468 F.3d at 1374 (addressing legal standard of inequitable conduct).

In its counterclaim, Lightspeed gives several examples to allege that Bose publicly used the invention underlying the '252 patent application more than one year before filing the application. Am. Answer, Counterclaims at ¶¶ 46–50. Lightspeed alleges that Dick Rutan publicly used the Voyager headset on a runway in the Mojave Desert in 1986; Dick Rutan and Jean Yeager publicly used the Voyager headset in their historic flight around the world in December 1986; the Voyager headset was publicly demonstrated at the 1987 Paris Air Show where attendees could use the headset without restriction; and the Voyager headset was offered for public display at the Smithsonian Museum in Washington, D.C. and the EAA aviation museum in Wisconsin in March 1988. *Id.*

■ Taking Lightspeed's factual averments of its pleadings as true, Lightspeed has alleged inequitable conduct of Bose by claiming Bose made a material misrepresentation when it failed to disclose in its patent application public uses of the Voyager headset. Therefore, Lightspeed has pleaded a plausible entitlement to relief by asserting Bose's actions in prosecuting the '252 patent constituted inequitable conduct, which would render the '252 patent unenforceable. Accordingly, this Court DENIES Bose's motion to dismiss Lightspeed's fifth counterclaim for failure to state a claim.

Addressing Bose's Rule 12(f) motion to strike Lightspeed's claim in the alternative, this Court DENIES Bose's Rule 12(f) motion to strike Lightspeed's claim because Bose fails to show that it cannot be doubted that Lightspeed could not prevail on its claim.

### III. CONCLUSION

For the reasons stated above, this Court grants Bose's motion to dismiss as to Counterclaim Count II and otherwise denies the motion.

SO ORDERED.